ELI SOUTHWORTH v. JAMES N. BEARNES.[1]

December 12, 1902.

Nos. 13,085—(29).

**Embezzlement by Attorney.**
>     Misappropriation by an attorney at law of the money of his client is
> such wilful misconduct in his profession as to justify his disbarment.

**Evidence.**
>     Upon a consideration of the evidence in this case, it is *held* that the
> respondent is guilty of such misconduct, and that he be removed from
> his office of attorney at law.

Upon the accusation and petition of Eli Southworth, as secretary of the state board of examiners in law, filed pursuant to the provisions of Laws 1901, c. 62, an order was issued from the supreme court requiring respondent, James N. Bearnes, to show cause why he should not be removed from his office of attorney and counsellor at law of said state. Judgment of disbarment ordered.

*Eli Southworth*, in pro. per.

*Hazen M. Parker*, for respondent.

PER CURIAM.

Charges of wilful misconduct in his office as an attorney of this court were preferred by the secretary of the state board of law examiners against the respondent, and thereupon the court, by its order, required him to show cause why he should not be removed from his office of an attorney of this court. He appeared in response to the order, and answered the charges. A referee was then appointed to take and report the evidence touching such charges. The evidence was taken and duly reported to the court, and the matter came on for hearing upon the report. After hearing the respondent by counsel, and the board by its secretary, and duly considering the evidence, we find the facts, as established by the evidence, to be as follows:

[1] Reported in 92 N. W. 466.

1. The respondent was duly admitted as an attorney of this court in the year 1884, and is still such attorney. On June 25, 1895, he received, as the attorney of Mary A. Stone, and for her, the sum of $500, in settlement of a certain action at law which he prosecuted for her as her attorney. He did not pay over to her any part of the money so received for her, but kept her in ignorance of the fact that it had been paid until September 23, 1895, when she first learned the fact from the defendant's attorneys in such action. Thereafter she frequently demanded or caused to be demanded of him the payment of the money so received by him, which he promised to pay, but neglected and failed to pay it, except the sum of $75, until January 23, 1902, when he paid to her the balance, under the following circumstances:

In July, 1900, she employed attorneys to take the necessary steps to recover the money from him. They brought an action in the district court of the county of Hennepin against him therefor, alleging in the complaint that he received the $500 for her, and that no part thereof had been paid, except the sum of $75. His verified answer thereto was simply a denial of all the allegations of the complaint. On October 15, 1900, when the cause was ready for trial, he stipulated in writing that judgment might be entered against him for the full amount demanded in the complaint, with interest. The entry of judgment was stayed, on stipulation by the plaintiff, for sixty days, to enable him to pay the amount. He did not pay the amount, and on November 4, 1901, upon her application, the district court made its order requiring him to pay to her the sum of $586.50, the amount of her claim against him, including interest, on or before November 30, 1901, and, if he failed to do so, to show cause before the court on December 2 thereafter why he should not be punished for contempt of court in disobeying the order. The money was not paid, and the hearing in the contempt proceedings was adjourned at his request from time to time until December 28, 1901, when the matter was fully heard, and the court adjudged him guilty of contempt of court, and that, as punishment therefor, he be confined in the county jail for ten days; but, for the purpose of giving him an opportunity to purge himself of the contempt by paying the money as ordered, execution of the

sentence was stayed for ten days, and on the tenth day he paid the money as directed.

In the month of August, 1896, Mr. J. D. Shearer, an attorney at law, had in his possession, for collection, a chattel mortgage on the household furniture of Mr. E. C. Durant, and had taken steps to foreclose the same, whereupon it was agreed between the attorney and mortgagor that the latter should pay ten dollars each month on the mortgage until it was paid. Mr. Durant was then employed outside of the city, and he arranged with the respondent, as his attorney, to look after his interest in the matter of paying the mortgage, and, further, that the promised monthly instalments should be sent to the respondent, and be paid over to Mr. Shearer as received. Accordingly Mr. Durant, for that purpose, delivered to the respondent $50, as follows: September 21, 1896, $10; December 7, 1896, $10; January 5, 1897, $10; February 11, 1897, $10; March 19, 1897, $5; April 13, 1897, $5. He never paid any of the money so received by him on the mortgage, and converted the several sums so paid to him to his own use. Mr. Durant had no knowledge that such sums had not been paid as agreed until some time in April, 1897, when proceedings were commenced the second time to foreclose the mortgage. He then demanded the money of respondent, and, upon his refusal to pay it, Mr. Durant employed another attorney, who secured an order from the district court on the respondent to pay the $50, or show cause on May 22, 1897, why he should not be punished for contempt of court for disobeying the order. The order was served on the respondent, and, on his promise to pay the money on May 26, no further proceedings were had on the order. He did not keep his promise, and another similar order was made by the court, returnable June 1. He then paid the money.

3. On October 17, 1900, the respondent received the sum of $127.50 from Mrs. H. E. De Marais, for which he gave her his receipt, to be used in the settlement of a charge of embezzlement made against her son by his employer; the money to be returned to her unless the prosecution against the son was abandoned. He afterwards, upon demand and the return of his receipt, paid the

money to the mother. We find that the charges of misconduct on the part of the respondent in respect to this money are not sustained by the evidence, and that he is not guilty thereof.

4. Misappropriation by an attorney at law of the money of his client is such wilful misconduct in his profession as will justify his disbarment or suspension. In re Temple, 33 Minn. 343, 23 N. W. 463. We accordingly find from the facts stated in subdivisions 1 and 2 hereof that the respondent is guilty of wilful misconduct in his profession as an attorney at law.

The power of the court in such cases ought not to be exercised where it is apparent that there is a bona fide controversy between attorney and client as to the value of his services or the amount of his lien in any given case, for proceedings to disbar an attorney must not be used as a substitute for the ordinary remedies for settling controversies between attorney and client. But where the failure of an attorney to account for the money of his client is not the result of honest differences or mere inadvertence or neglect, and a clear case of misappropriation of the money of his client is established, the power of the court to purge the profession of such an unfaithful member should be resolutely exercised. This is a duty the court owes to itself, to the bar, and to the public. To itself, for attorneys are officers of the court, and it must not dishonor itself by knowingly retaining unfaithful assistants in the administration of justice. To the bar, for its honor and usefulness can only be preserved by the casting out of its faithless members. To the public, for in no other way can it be protected from pecuniary losses at the hands of dishonest lawyers who prey upon their clients.

The respondent's case is not one where it is sought to compel him to settle a controversy between him and his client by disbarment proceedings, nor is it a case where the failure to account for the client's money was the result of inadvertence or neglect. But we forbear to comment upon his conduct, as disclosed by the facts we are constrained by the evidence to find. Whether he should be disbarred, or suspended for a term, has been the subject of our serious consideration. If he were a young and inexperienced lawyer, who, under stress of temptation, and a failure fully to

appreciate his duties to his client, had misappropriated the money of his client, a suspension for a limited term might satisfy the ends of justice. But such is not the respondent's case. He is a lawyer of some eighteen years of experience, and we have reluctantly reached the conclusion that he ought to be disbarred.

It is therefore ordered that the respondent, James N. Bearnes, be removed from his office of attorney of this court; that he be prohibited from practicing as an attorney at law in any of the courts of this state; that his name be stricken from the roll of attorneys in this court; and that judgment be entered accordingly,—reserving, however, to him the right to apply to the court, after the expiration of two years from the date of the judgment, to be reinstated in such office, upon proof being made of his then moral fitness to be intrusted with the office.

Let judgment be entered accordingly.